**NATIONSBANK, N.A. f/k/a Boatmen's Bank of Southern Missouri, Plaintiff–Respondent,**

v.

**William E. FOLLIS and Vivian J. Follis, Defendants– Appellants.**

No. 22907.

Missouri Court of Appeals, Southern District, Division Two.

April 24, 2000.

Donald W. Ingrum, Ingrum, Wilson & Akers, L.L.C., Branson, for Appellants.

Thomas A. Schwindt, Barker & Schwindt, P.C., Kansas City, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

William E. Follis and Vivian J. Follis ("The Follises") appeal from the trial court's entry of a deficiency judgment in favor of NationsBank, N.A. ("Bank"), f/k/a Boatmen's Bank of Southern Missouri, for the amount due on a simple interest motor vehicle installment sale contract. On appeal, the Follises claim that the trial court erred in entering a deficiency judgment in favor of Bank as Bank disposed of the collateral prior to the end of the established redemption period. We affirm.

Appellate review of bench-tried cases is governed by Rule 73.01(c)[1] as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*; *Springfield Chrysler–Plymouth, Inc. v. Harmon*, 858 S.W.2d 240, 241 (Mo.App. S.D.1993). Where, as in this case, the trial court has not made any specific findings of fact, all fact issues will be found to be in accord with the decision of the trial court, and the judgment will be affirmed under any reasonable theory supported by the evidence. *Minton v. Hill*, 944 S.W.2d 250, 253 (Mo.App. W.D.1997).

The Follises entered into a "Simple Interest Motor Vehicle Installment Sale Contract and Security Agreement" ("the contract") on December 9, 1996 to finance the purchase of a new 1996 Buick Regal ("Buick"). The contract included an installment note in the principal amount of $25,204.70, payable in 66 monthly installments of $505.48 beginning January 8, 1997. The Follises were not able to make the monthly payments on the Buick and voluntarily surrendered possession of the vehicle to Bank. On April 9, 1997, Bank mailed the Follises a notice advising them that Bank had possession of the Buick and would sell the vehicle at a private sale if the Follises did not redeem the Buick prior to April 21, 1997.

On May 30, 1997, Bank made an application to the Missouri Department of Revenue for a repossession title for the Buick. The Buick was delivered to an automobile auction for reconditioning and sale, and on July 29, 1997, a seller's invoice and an odometer statement were prepared. At that time, the gross sale price of the Buick was determined to be $14,000. On July 31, 1997, the Buick was sold, and Bank was issued a check for the net sale price of $13,547.50 on August 5, 1997. The Follises

---

1. All rule references are to Missouri Rules of Civil Procedure (1999), unless otherwise indicated.

Rule 73.01(c) (1999) provided the applicable standard of review for this case. As of January 1, 2000, however, Rule 73.01(c) became new Rule 84.13(d).

received notice of the sale on August 27, 1997.

On September 21, 1998, Bank filed a petition for breach of contract seeking to obtain a deficiency judgment against the Follises for the difference between the amount owed on the contract and the amount realized from the sale of the Buick, plus interest and attorney's fees. On February 25, 1999, judgment was entered against the Follises in favor of Bank. The Follises appeal from the trial court's ruling.

In their sole point on appeal, the Follises allege that the trial court erred in entering a deficiency judgment in favor of Bank because Bank "disposed of and took title to the security on April 11, 1997,[2] despite the fact that [the Follises] were advised in writing by the Bank on April 9, 1997, that they had until April 21, 1997, to redeem the collateral, in that the disposition of the collateral prior to April 21, 1997, prevents the Bank from collecting a deficiency on the contract."

After repossession of the collateral, a secured creditor is required to give the debtor notice concerning the collateral's disposition. Section 400.9–504(3)[3] provides, in pertinent part:

Disposition of the collateral may be by public or private proceedings ... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

A secured creditor seeking a deficiency judgment bears the burden of proving compliance with the notice requirement of Section 400.9–504(3). *Cherry Manor v. American Health Care*, 797 S.W.2d 817, 820–21 (Mo.App. S.D.1990). "The right to a deficiency judgment accrues only when there is strict compliance with statutory requirements," *Chrysler Capital Corp. v. Cotlar*, 762 S.W.2d 859, 861 (Mo.App. E.D.1989), and any doubts as to whether there has been compliance with the provisions of Section 400.9–504(3) are to be resolved in favor of the debtor. *Boatmen's Bank of Nevada v. Dahmer*, 716 S.W.2d 876, 877 (Mo.App. W.D.1986).

In the instant case, the Buick was to be sold in a private sale. Bank was, therefore, required to state in its notice the date after which the collateral would be sold. *See First Missouri Bank & Trust Co. of Creve Coeur v. Newman*, 680 S.W.2d 767, 769 (Mo.App. E.D.1984). The evidence shows that Bank complied with this statutory requirement. In a notice dated April 9, 1997, Bank set forth April 21, 1997 as the date after which it would conduct a private sale.

Furthermore, Bank, in compliance with the date set forth in its notice, did not take title to or dispose of the collateral prior to April 21, 1997. Contrary to the Follises' argument, Bank did not dispose of the Buick on April 11, 1997, but waited until May 30, 1997 to file its application for Missouri title and license. Although Bank indicated a date of April 11, 1997 on its

2. Following the filing of the briefs in this matter, the Follises' attorney indicated in a letter to the Court that there was a factual error in his brief as to the April 11, 1997 date. He stated, "[t]he April 11, 1997 date is a correct date, but not for the date the application for title was made. Mr. Schwindt, [Bank]'s counsel, statement of facts is correct when he states that the application for the repossessed title was made by the Bank on May 30, 1997." The Follises' attorney indicated, however, that April 11, 1997 was, the

"correct" date as to when the Bank "purchased" the Buick. In this regard, we note that although Follises' attorney corrected the factual error in his brief as to the statement of facts, both the point relied on and argument portions of his brief erroneously rely on April 11, 1997 as being the date upon which the application for title was made.

3. All statutory references are to RSMo 1994, unless otherwise indicated.

affidavit of repossession as the date of *physical possession* and as the *purchase* date on its application for Missouri title and license, that was not indicative of ownership.

Missouri is a "strict title" state, which means that "the assignment of the certificate of title in the manner provided by [Section 301.210, RSMo Cum.Supp. 1999] is the exclusive and only method of transferring title to a motor vehicle, whether the transfer is made by the owner by way of sale or gift or is effected by operation of law."[4] *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 403 (Mo. banc 1986) (quoting 7A Am. Jur.2d Automobiles and Highway Traffic § 30 (1980)). Consequently, until Bank complied with the requirements of Section 302.210 and applied for title and license on May 30, 1997, it did not have the power to sell the Buick and thus, the redemption period continued.

The purpose of notice is to apprise the debtor of the sale details so that debtor may take appropriate action to protect his or her interest. *Modern Auto Co., Inc. v. Bell*, 678 S.W.2d 443, 445 (Mo.App. E.D. 1984). That purpose was met here as Bank gave reasonable notice as to the sale of the Buick and did not take title to or dispose of the vehicle until after April 21, 1997. Therefore, the Follises' point must be denied. The trial court's entry of a deficiency judgment in favor of Bank is affirmed.

PREWITT, J., and BARNEY, J., concur.

4. Section 301.210, RSMo Cum.Supp.1999, provides, in pertinent part:

1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on such motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of such motor vehicle or trailer; . . .

2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, . . .

\* \* \* \*

4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.