In re Jerry Dale **JENKINS**, Shirley Lee Jenkins, Debtors.

Bill Ryan, Kathy Ryan, Plaintiffs,

v.

Jerry Dale Jenkins, Shirley Lee Jenkins, Defendants.

Bankruptcy No. 99–44693–ABF.
Adversary No. 00–4041–ABF

United States Bankruptcy Court, W.D. Missouri.

May 23, 2000.

24. *Id.*

Robert W. Wheeler, Keytesville, MO, for plaintiff.

J. Brand Eskew, Blue Springs, MO, for debtor/defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

This is a dischargeability action under 11 U.S.C. § 523(a)(2), (4), and (6). Plaintiff Ryan is a truck driver who entered into a written agreement to obtain a 1983 Kenworth Truck from debtor-defendant Jerry Dale Jenkins, who is also in the trucking business. The purchase price was to be $7,000.00. Ryan and his wife Kathy Ryan, paid Jenkins $3,000.00, and Jenkins transferred possession of the truck to Mr. Ryan in June 1997. Jenkins, however, did not transfer title to the Ryans. At the same time, the parties orally agreed that Mr. Ryan would carry loads at Jenkins' request, using the 1983 Kenworth, and also using a trailer owned by Jenkins. Plaintiff carried loads for Jenkins for a period of approximately two (2) months. During that time, Jenkins received the shipping charges on loads carried by Mr. Ryan, deducted the amounts due Ryan as monthly payment on the Kenworth, as well as insurance charges, payments due for use of the trailer, and advances which Jenkins had made to Ryan for fuel and repairs. The balance from each load, after those deductions, was paid to Mr. Ryan.

In early August 1997, Mr. Ryan advised Jenkins that the venture was not as profitable as he had hoped, and that he therefore intended to park the truck in his yard and return to his previous job. Due to the payments which had been deducted, Mr. Ryan was current on his obligations to Jenkins. Nevertheless, on or about August 21, 1997, Jenkins took the 1983 Kenworth from the Ryans' home, at a time when Mr. Ryan was absent. A state court law suit arising out of the removal of the truck was pending when Jenkins and his wife, Shirley Lee Jenkins, filed this Chapter 7 bankruptcy proceeding. Thereafter the Ryans filed a complaint against both debtors objecting to the dischargeability of any debt due him, and also objecting to their discharge.[1]

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## ISSUE PRESENTED

■ Missouri law provides in general that the sale of a vehicle is fraudulent and void if the seller does not contemporaneously transfer title to the buyer. Thus, if the parties intended their transaction to be a sale, the failure to deliver title constitutes actual fraud under Missouri law. Debts for money obtained by actual fraud are nondischargeable under 11 U.S.C. § 523(a)(2). Thus, the issue presented is whether the parties intended their transaction to be a sale, or a lease.

## DECISION

I find that the parties did intend for this transaction to be a sale of the vehicle, and that debtors' failure to deliver title was fraudulent. Therefore, the amount of money actually paid to Jerry Jenkins by Ryan, the sum of $3,000.00, is nondischargeable as to Mr. Jenkins.

---

1. Ryan offered no evidence at all bearing on his objection to discharge under Section 727 of the Bankruptcy Code. 11 U.S.C. § 727.

The Court directed a verdict in favor of Jenkins as to the discharge objection at the close of the plaintiffs' case.

## ANALYSIS

■ Missouri law requires that at the time a vehicle is purchased, the seller must pass a Certificate of Ownership with an assignment thereof to the buyer. R.S.Mo. 301.210.4 reads as follows:

It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

On or about May 10, 1997, Bill and Kathy Ryan paid to Jenkins the sum of $3,000.00. On that same date, the parties signed a document[2] which reads as follows:

BILL AND KATHY RYAN BOUGHT THE 83 KENWORTH FOR $7,000.00. HE GAVE U.S. A DOWN PAYMENT OF $3,000.00.

Interest amount due is $400.00.

The document goes on to lists the payments which are required to be made, the date due, the date paid, and other information.

Thus, on its face, the only document executed by the parties, and containing the signatures of both Bill Ryan and Jerry Jenkins, states that the transaction involved the purchase of a 1983 Kenworth. Nevertheless, Jenkins contends that the transaction was intended to be a lease. In support thereof, Jenkins contends that he, and not Ryan, held ICC operating authority, and that the truck could only be operated for hire pursuant to valid ICC authority. Therefore, Jenkins contends, the parties agreed that he would continue to own the vehicle, and that Mr. Ryan would operate it pursuant to a lease. At the same time, however, Jenkins testified that he was prepared to transfer title to the Ryans, but they had not obtained proper insurance for the vehicle, so he did not do so. The problem with that contention is that the vehicle was insured, and that Jenkins was taking monies from the amount due Mr. Ryan to pay himself for the cost of that insurance.

The document executed by the parties, while informal, makes clear that they intended a sale of the truck, not a lease. Mr. Jenkins may well have intended that the truck be used to carry loads as directed by him, using his ICC authority, but Mr. Ryan was certainly not restricted to that use. The failure of Jenkins to contemporaneously deliver title to the vehicle meant the transfer was fraudulent and void under Missouri law.

■ Section 523(a)(2) of the Bankruptcy Code (11 U.S.C. § 523) provides that a bankruptcy discharge does not discharge an individual debtor from any debt "for money . . . to the extent obtained by . . . actual fraud." The action of Mr. Jenkins in failing to transfer title constitutes actual fraud under Missouri law, and is therefore nondischargeable.

■ Furthermore, I find that the actions of Jenkins in taking $3,000.00 from the Ryans without transferring title, constitutes common law actual fraud. In order to establish actual fraud, a creditor must prove each of the following elements:

1. That the debtor made representations; and

2. That at the time the representations were made, the debtor knew them to be false; and

3. That the debtor made the representations with the intention and purpose of deceiving the creditor; and

4. That the creditor justifiably relied on the representations; and

2. Pl.Ex. # 1.

5. That the creditor sustained the alleged injury as a proximate result of the representations.[3]

I find that the in signing the document, Jenkins represented to Ryan that he would transfer title to the vehicle in exchange for the down payment of $3,000.00, and the promise to make future payments. I further find, based on the testimony, that at the time of the representation Jenkins did not intend to transfer title to the vehicle, and that he made the false representation with the intention and purpose of deceiving plaintiff. I further find that Ryan justifiably relied on the representation that title to the vehicle would be transferred to him, and sustained injury as a proximate result of the misrepresentation.

For all these reasons, I find that plaintiff has made out a cause of action under Section 523(a)(2)(A), for obtaining money by actual fraud.

■ The next issue concerns the amount of damages suffered as a result of Jenkins' fraud. As noted, the Ryans made a down payment of $3,000.00 on May 10, 1997. Thereafter, Mr. Jenkins received payment for shipments carried by Ryan, and deducted from that payment amounts due him for monthly payments due on the Kenworth, rental charges for use of his trailer, insurance, and advances to Mr. Ryan for fuel and repairs. In all, Jenkins received a total of $10,544.66. That amount, less the fifteen percent (15%) trailer charge ($1,581.00), insurance charges of $446.43, and truck payments of $600.00, was in effect paid to Mr. Ryan. The Ryans contend that they expended a total of $4,416.29 for repairs, fuel and parts for the truck. However, if the Ryans in fact purchased the vehicle, as they contend, and the Court has found, they are responsible for those charges. While Mr. Ryan contends that the repair expenses were high because of the condition of the truck, he also admits that he did not ask to inspect the truck prior to the purchase, as he certainly had the right to do. There-

fore, he did not justifiably rely on any representation made by Jenkins as to the condition of the truck. Consequently, the only damages available to him by virtue of a fraudulent representation are those related to the failure to tender title to the truck contemporaneous with the purchase. There is no evidence that Ryan spent any money out-of-pocket other than the $3,000.00 down payment. Indeed, the evidence seems to show that charges for repairs, fuel, parts and insurance were in the main advanced by Jenkins, and taken out from monies due from Jenkins to Mr. Ryan. In any event, the monies received by Mr. Ryan for carrying loads were more than sufficient to pay the cost of repairs, so no damages will be awarded on that basis.

The Ryans also contend, and Jenkins concedes, that he failed to pay the final payment due Ryan in the amount of $511.70. No evidence was offered to demonstrate any basis for a finding that that obligation is nondischargeable.

■ Finally, Ryan contends that the action of Jenkins in failing to transfer title to the truck is a violation of the Merchandising Practice Act, R.S.Mo. §§ 407.020–.300. That statute allows plaintiff to recover actual damages, and also punitive damages and attorney's fees, within the Court's discretion. But that statute, by its terms, is only applicable to a person who "purchases or leases goods or services primarily for personal, family, or household purposes ..." Here, Ryan did not purchase the truck primarily for personal, family, or household purposes. He testified that he had been a trucker for 34 years, and that he purchased the 1983 Kenworth for in his occupation. When he realized that driving the truck would not be a profitable venture, he parked it in his yard and did not use it. I find, based on his testimony, that the 1983 Kenworth was not purchased primarily for personal, family, or household

3. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 342 n. 1 (8th Cir. 1987).

purposes and that, therefore, the Merchandising Practice Act is not applicable.[4]

Plaintiff offered no evidence to demonstrate that Shirley Jenkins, who is listed on the title as one of the owners of the 1983 Kenworth, participated in any of the dealings between the parties. Indeed, the contract was signed by Mr. Jenkins but not by his wife. Since there is no evidence that Shirley Jenkins made any fraudulent representation, or even knew about her husband's dealings with the Ryans, judgment will be entered in her favor.

Based upon the above and foregoing, an Order will be entered finding in favor of plaintiff and against debtor-defendant Jerry Dale Jenkins in the amount of $3,000.00, such judgment to be nondischargeable under 11 U.S.C. § 523(a)(2)(A). In all other respects, judgment will be entered for the defendants.

4. *Compare, Antle v. Reynolds,* 15 S.W.3d 762    (Mo.App.W.D.2000).