Betty JACKSON, d/b/a Twin City Auto, Plaintiff–Appellant,

v.

Charlotte CANNON and Sharon Simpkins, Defendants– Respondents.

Nos. 25647, 25775.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 2004.

Stephen R. Southard, Cape Girardeau, for appellant.

Sharon Simpkins, Charlotte F. Cannon, Scott City, pro se.

JEFFREY W. BATES, Chief Judge.

Betty Jackson ("Jackson") sued Charlotte Cannon ("Cannon") and Sharon Simpkins ("Simpkins") for allegedly breaching a retail installment sales contract to purchase a used automobile. Judgment was entered against Jackson on her claim after a bench trial, and she appealed.

### I. Standard of Review

Our review of this court-tried case is governed by Rule 84.13(d).[1] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Citibank (South Dakota), N.A. v. Mincks,* 135 S.W.3d 545, 548 (Mo.App. 2004).[2]

We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Herigon v. Herigon,* 121 S.W.3d 562, 565 (Mo.App.2003); *Kearney Commercial Bank v. Popejoy,* 119 S.W.3d 143, 146 (Mo.App.2003). Credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part,

---

1. All references to rules are to the Missouri Rules of Civil Procedure (2004).

2. *Murphy* interpreted former Rule 73.01. The provisions of that earlier rule are now found, in essentially the same form, in Rule 84.13(d).

or all of the testimony of any witness. *VanCleve v. Sparks*, 132 S.W.3d 902, 905 (Mo.App.2004).

Since neither party requested that the trial court prepare findings of fact, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *see also State ex rel. Thomas v. Neeley*, 128 S.W.3d 920, 924 (Mo.App.2004). The following summary of the facts has been prepared in accordance with these principles of appellate review.

## II. Facts and Procedural History

Jackson owns a used car lot in Scott City, Missouri. She operates the lot as a sole proprietor and does business as Twin City Auto Service. On March 14, 2000, Jackson sold a 1993 Chevrolet Lumina to Candy Caldwell ("Caldwell"). The Lumina was titled in Caldwell's name. Jackson financed Caldwell's purchase of the vehicle and arranged for payments to be made in $230 monthly installments.

Several months after Caldwell purchased the car, she began having "problems" and faced the prospect of not being able to continue making her car payments. Caldwell is Simpkins' daughter and Cannon's half-sister. Cannon offered to assume the payments and use the car herself because she needed a reliable vehicle for work. She approached Jackson and asked to take over the payments on the Lumina. Jackson agreed to do so, provided both Cannon and Simpkins signed a new contract with Jackson.

Jackson met with Cannon and Simpkins on October 13, 2000. Simpkins had the Lumina title with her. She had signed her daughter's name in the owner's assignment block on the back of the document. Jackson knew it was Simpkins who actual-ly signed Caldwell's name on the title.[3] Jackson prepared a new retail installment sale contract and security agreement which purported to sell the Lumina to Cannon and Simpkins. The contract named Jackson as the seller of the vehicle; Cannon and Simpkins were named as joint buyers. All three parties signed the contract. Cannon also signed a separate contract for security, which allowed Jackson to repossess the vehicle without legal process in the event of a default in making payments. After these contracts were signed, Jackson executed the dealer reassignment section of the Lumina's title and gave this document to Cannon and Simpkins.

After the purported sale took place, Cannon made one payment on the car in December 2000. Thereafter, she ceased making payments because she was experiencing significant problems with the vehicle's transmission.

In September 2002, Jackson sued Cannon and Simpkins. The petition alleged that Jackson had "entered into a contract with Defendants for the sale of certain 1993 Chevy Lumina. Said retail installments sale contract and security agreement is attached to this Petition and is incorporated herein by reference." Jackson sought to recover the principal and interest due on the remaining installments of the contract, plus attorney's fees and costs. Cannon and Simpkins represented themselves in the lawsuit *pro se*. They filed no answer to the petition, but they did assert a counterclaim against Jackson. The counterclaim alleged a breach of warranty for failing to repair the Lumina's faulty transmission and for not installing a rebuilt transmission in the car as agreed.

The case was tried on March 31, 2003. At trial, Jackson identified and offered in

---

**3.** Jackson testified that Simpkins did so be-      cause Caldwell was incarcerated at the time.

evidence the retail installment sale contract and security agreement. Jackson's claim that she was entitled to recover money damages from Cannon and Simpkins was based exclusively upon the terms and conditions of this contract. At the conclusion of the trial, the court took the matter under advisement.

The docket sheets contain an unsigned entry dated April 1, 2003, denominated "Judgment Entered." This entry states that the trial court found against Jackson on her claim and against Cannon and Simpkins on their counterclaim. Jackson filed a motion for new trial on April 22, 2003. The motion was denied on May 1, 2003. Jackson filed a notice of appeal on May 9, 2003, which was assigned appeal No. 25647 by this Court. On July 18, 2003, we issued an order to show cause why appeal No. 25647 should not be dismissed as an appeal not taken from a final judgment.

On July 22, 2003, a document denominated "Judgment" and signed by the trial judge was entered and filed. As before, this judgment recited that the court found against Jackson on her breach of contract claim and against Cannon and Simpkins on their breach of warranty counterclaim. Jackson filed a second notice of appeal on July 30, 2003, which was assigned appeal No. 25775 by this Court.

### III. Discussion and Decision

■ As a preliminary matter, we first address the issue that arises because Jackson has filed two notices of appeal in this case.[4] She has attempted to challenge the denial of her breach of contract claim by appealing from the trial court's April 1, 2003 docket entry and from the separate judgment entered on July 22, 2003.

An aggrieved party may only appeal from a final judgment of the trial court. *Nuspl v. Pinkston,* 84 S.W.3d 131, 132 (Mo.App.2002); § 512.020.[5] In a civil case, a judgment is a writing both signed by a judge and expressly denominated a "judgment." Rule 74.01(a); *Martin v. Morgan,* 101 S.W.3d 336, 337 (Mo.App.2003). The docket entry did not constitute a judgment from which an appeal could be taken because the entry was unsigned. *See SLJ v. RJ,* 101 S.W.3d 339, 340 (Mo.App.2003) (docket entry stating "Judgment Granted," but not signed or initialed by the trial court judge, was not a final, appealable judgment). Judgment was not entered in this case until July 22nd, when a separate document denominated "Judgment" signed by the trial judge was filed. *See* Rule 74.01(a).

Since the unsigned April 1st docket entry does not constitute a final judgment from which an appeal could be taken, we do not have jurisdiction over appeal No. 25647. *Jones v. Kennedy,* 108 S.W.3d 203, 205 (Mo.App.2003). Accordingly, we dismiss this appeal. *O'Neill v. O'Neill,* 864 S.W.2d 7, 8 (Mo.App.1993).

Turning to the merits of appeal No. 25775, Jackson presents two points for our determination. Neither establishes any basis for overturning the trial court's judgment.

■ In Jackson's first point, she contends the trial court erred in entering judgment against her because she proved all of the elements necessary to recover the current balance of a "promissory note" by producing the note and proving the balance of the note. In the court below, this case was pled and tried by Jackson as an action to recover for breach of a retail

---

4. At Jackson's request, her two appeals have been consolidated.

5. All references to statutes are to RSMo (2000).

installment contract to sell an automobile. It was not tried on the theory that Jackson was seeking to recover on a promissory note. "On appeal, a party is bound by the position he [or she] took in the circuit court and will not be heard on a different theory." *Howsmon v. Howsmon*, 77 S.W.3d 752, 757 (Mo.App.2002) (brackets in original). Because Jackson did not assert this theory of recovery in the trial court, we will not consider it on appeal. *Reese v. Ryan's Family Steakhouses, Inc.*, 19 S.W.3d 749, 752 (Mo.App.2000). Point I is denied.

■ In Jackson's second point, she contends Cannon and Simpkins failed to establish their affirmative defense of breach of warranty so as to defeat Jackson's right of recovery. This is a curious argument since Cannon and Simpkins filed no answer to the petition and, therefore, asserted no affirmative defenses. Be that as it may, Cannon and Simpkins argue the trial court properly entered judgment against Jackson because the title to the Lumina was never assigned to her by Caldwell. We agree.

■ Missouri is a strict title state, which means assignment of the certificate of title in the manner provided by statute is the exclusive and only method of transferring title to a motor vehicle. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 403 (Mo. banc 1986). This is true regardless of whether transfer from the owner is made by way of sale or gift or is effected by operation of law. *Id.* The statutory requirements governing the sale or transfer of ownership of a motor vehicle are found in § 301.210. It states, in pertinent part, as follows:

1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an as-signment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on such motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of such motor vehicle or trailer. . . .

4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

The evidence at trial established that Caldwell was current on her car payments and was not in default as of October 13, 2000. No repossession of the Lumina had occurred, and she was still listed on the title as the vehicle's sole owner. Simpkins is the person who actually filled out the assignment block on the back of the Lumina's title. She was not the holder of the title certificate, and there was no proof that she had any legal authority (e.g., power of attorney) to sign Caldwell's name on her behalf. Jackson was aware of this when she attempted to sell the Lumina to Cannon and Simpkins.

The foregoing evidence supports the conclusion that Jackson acquired no ownership interest in the Lumina because Caldwell did not assign her ownership interest in the vehicle to Jackson as required by § 301.210.1. *See State v. Beaird*, 914 S.W.2d 374, 378 (Mo.App.1996) (absent a properly completed assignment of title from the seller, no legal or equitable title passes to the buyer); *Heineman v. Heineman*, 768 S.W.2d 130, 139 (Mo.App.1989) (a change in the ownership of a motor

vehicle can only occur by transferring a certificate of title in accordance with this statute); *Jackson v. Charlie's Chevrolet, Inc.,* 664 S.W.2d 675, 677 (Mo.App.1984) (any attempt to buy or sell a motor vehicle without the delivery of a certificate of ownership properly assigned is void pursuant to § 301.210). Without a proper assignment of title from Caldwell, Jackson lacked the power to sell the vehicle to Cannon and Simpkins. *See NationsBank, N.A. v. Follis,* 15 S.W.3d 421, 424 (Mo. App.2000). Simply put, Jackson could not sell a car she did not own. Her attempt to do so was fraudulent and void. *Rockwood Bank v. Camp,* 984 S.W.2d 868, 873 (Mo. App.1999); *see In re Jenkins,* 249 B.R. 532, 534–35 (Bankr.W.D.Mo.2000). For that reason, the retail installment contract to sell the vehicle was also fraudulent, void and unenforceable. *See Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 26 (Mo.1969) (an agreement to sell an automobile in a manner violating § 301.210 was void; a valid and enforceable contract may not arise out of a transaction prohibited by statutory law). Accordingly, Jackson was not entitled to recover money damages based on the void and unenforceable contract to sell the Lumina to Cannon and Simpkins. As this is a reasonable theory of defense supported by the evidence, we must affirm the judgment on this ground. *Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc.,* 109 S.W.3d 200, 203 (Mo.App.2003). Point II is denied.

We conclude that the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. It is, therefore, affirmed.

SHRUM and BARNEY, JJ., concur.