**Robert SCHUCHMANN, Plaintiff–Respondent,**

v.

**AIR SERVICES HEATING & AIR CONDITIONING, INC., Defendant–Appellant.**

**No. 27511.**

Missouri Court of Appeals, Southern District, Division One.

Aug. 31, 2006.

---

David L. Wieland, David L. Wieland, LLC, Springfield, for appellant.

W. Tom Norrid, Norrid & Robertson, P.C., Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Robert Schuchmann ("Plaintiff") filed a two-count "Petition for Damages" against Air Services Heating & Air Conditioning, Inc. ("Defendant"). Count I sought damages under Chapter 407 of the Revised Statutes of Missouri (2000), otherwise known as the Missouri Merchandising Practices Act ("MMPA"). Count II pled a cause of action for common law fraud. After the case was submitted to the trial court on a set of stipulated facts, the court entered a judgment for Plaintiff in the amount of $6,406.[1]

Defendant appeals, alleging three points of trial court error. In Point I, Defendant argues that Plaintiff's cause of action was barred by res judicata principles. Defendant's second point alleges the judgment was against the weight of the evidence because Plaintiff did not prove an MMPA violation. Finally, in Point III, Defendant claims Plaintiff's cause of action "was filed beyond any applicable statute of limitations." We affirm.

## STANDARD OF REVIEW

The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo.banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* at 32[2]. In our review we must decide if the trial court drew correct legal conclusions from the stipulated facts entered into by the parties. *Hadel v. Board of Educ. of Sch. Dist. of Springfield, R–12*, 990 S.W.2d 107, 111[2] (Mo.App.1999).

## FACTS

The stipulated facts show that Plaintiff bought a "4 ton heating and air condition-

---

1. It appears that the parties agree that the damages award related to Count I of the petition.

ing unit" with a "lifetime warranty" from Defendant in May 1998. From that time until December 2000, Defendant repaired the unit on five occasions, thus honoring the warranty. In December, Defendant informed Plaintiff that it was no longer operating in the Joplin area and offered him $300 to cancel the warranty which Plaintiff rejected.

Even though Defendant was not doing business in Plaintiff's general residential vicinity, it continued to honor the warranty until May 2003. After this last service call in May 2003, Defendant again offered Plaintiff money to cancel the warranty ($400). As before, Plaintiff rejected the offer. Thereafter, Defendant refused to honor the warranty.

In July 2003, Plaintiff filed an action against Defendant in "small claims court," alleging Defendant refused to honor the lifetime warranty, refused to fix a problem with the unit ("freon leaking"), and refused to send Plaintiff an "evaporator coil" to fix the freon problem.[2] The small claims court awarded Plaintiff $3,000 for damages. Defendant then filed an application for trial de novo. Before the de novo trial, Plaintiff tried to amend his petition for damages to include an additional count, namely, an MMPA violation. The court, however, sustained Defendant's motion to strike "as to new cause of action re [MMPA]." After the trial, the court entered a judgment, awarding Plaintiff $1,047 plus costs.[3]

Later, in December 2004, Plaintiff filed the underlying action involved in this appeal, specifically, his two-count "Petition for Damages" alleging an MMPA violation and common law fraud. Primarily at issue here is Count I, the MMPA suit. The essence of Plaintiff's Count I is that Defendant promised a lifetime warranty to Plaintiff when he purchased the unit, and when it refused to honor this obligation, an MMPA violation occurred, thus causing Plaintiff injury.

After receiving the stipulation of facts and suggestions by both parties, the trial court entered a judgment for Plaintiff in the amount of $6,406. This appeal followed.

### Point II: Sufficiency of the Evidence to Support MMPA Violation[4]

Defendant's second point maintains the trial court erred in entering judgment for Plaintiff because there was no evidence to prove a violation of the MMPA. In essence, Defendant alleges that the evidence showed a simple breach of contract, i.e., there was no evidence of any deception, fraud, unfair practice, or the like as required under the MMPA.

The pertinent part of the MMPA statute (§ 407.020.1) provides:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, *unfair practice* or the concealment, suppression, or omission of any material fact *in connection with the sale* or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice." [5] (Emphasis added.)

---

2. When using the term small claims court, we are referring to the small claims division of the circuit court.

3. There is no indication in the record what these damages covered, i.e., whether the damages were for a simple, one-time breach of the warranty (evaporator coil) or for the entire value of the *lifetime* warranty.

4. We address Defendant's second point initially for ease of discussion.

5. Under section 407.025.1, private citizens are given the right to bring a private civil action against a person or entity committing an MMPA violation.

Defendant argues there is no evidence of deception, or fraud, or false pretense, or false promise, or misrepresentation, or unfair practice *at the time the unit was sold;* consequently, no MMPA violation was proven. Repeatedly, throughout its brief, Defendant focuses on the fact that there was no evidence of "unfairness" at the time of the sale. Defendant argues that "the actual words of the statute cannot be ignored," singling out the "in connection with the sale" language of section 407.020.1.

Defendant further asseverates that the MMPA "requires some connection between the deception, fraud, false pretense, promise, or misrepresentation, unfair practice and the sale." Defendant continues in its brief:

"True, [Defendant] represented at the time of the sale that in new condition [sic] with a lifetime warranty. But there is no stipulation that, *at the time of the sale* in 1995, [Defendant] *intended not to perform.* To the direct contrary, at the time of making the representation, a reasonable inference may be drawn from the stipulations that when [Defendant] made the representations and warranty at the time of the sale, he had every belief that he would live up to the representations and warranties." (Emphasis added.)

■■■ Defendant is simply wrong, however, when it says we must reverse because Plaintiff did not prove Defendant intended from the beginning to default at some time on its promise of a lifetime warranty. Such an intent is not an element of an MMPA case. This follows from a reading of the last sentence of section 407.020.1: "Any act, use or employment declared unlawful by this subsection violates this subsection *whether committed before, during or after the sale,* advertisement or solicitation." (Emphasis added.) Thus, the fact that Defendant's refusal to honor the warranty came after the sale is of no consequence.

■■■ Defendant's Point II argument also ignores the plethora of case law holding that the MMPA serves as a supplement to the definition of common law fraud; it eliminates the need to prove an intent to defraud or reliance. *See, e.g., Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 899 (Mo.App.2003). *See also* 15 CSR 60-8.020(2).[6] Consequently, Defendant's argument that the evidence failed to show a connection between the sale and some sort of "unfairness" at the time of the transaction is unavailing.[7]

**6.** 15 CSR 60-8.020(2) provides: "Proof of deception, fraud, or misrepresentation is not required to prove unfair practices as used in section 407.020.1., RSMo."

**7.** Defendant is not entirely at fault for its lack of focus on the proper issue. Plaintiff's petition is not a model of clarity. However, Plaintiff did plead, *in general*, that the failure to honor the warranty "was, therefore, a violation of V.A.M.S. § 407.020, which prohibits such practices." It is clear that Defendant knew this was the central issue of the case. As will be shown, *infra*, the "unfair practice" of intentionally breaching a lifetime warranty violates the MMPA. As this issue was generally raised by the pleadings, it is a tenable basis

supported by the evidence and we must affirm the judgment. *See Sheedy v. Missouri Highways and Transp. Comm'n.,* 180 S.W.3d 66, 71–72 (Mo.App.2005); *American Standard Ins. Co. of Wisconsin v. May,* 972 S.W.2d 595, 601 (Mo.App.1998); *Computer Sales Intern., Inc. v. Family Guardian Life Ins. Co.,* 860 S.W.2d 826, 829–30 (Mo.App.1993). The judgment must be presumed correct and it is Defendant's burden to show otherwise. *Surrey Condominium Ass'n., Inc. v. Webb,* 163 S.W.3d 531, 535–36[2] (Mo.App.2005). Because Defendant has chosen to ignore other reasonable bases supporting the affirmance of the trial court's judgment, the result here is practically foreordained.

■ The Point II question that remains is this: Can Defendant's failure to honor the lifetime warranty be an actionable "unfair practice" under the MMPA (as the trial court implicitly found)? This court answers, "Yes."

An unfair practice is defined as a practice that either: (1) offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions *or* (2) is unethical, oppressive, or unscrupulous; *and* (3) presents a risk of, or causes, substantial injury to consumers. 15 CSR 60–8.020. Due to the unrestricted and all-encompassing nature of section 407.020 of the MMPA, the Supreme Court of Missouri, in speaking of the statute, has stated that "the literal words cover *every practice imaginable and every unfairness to whatever degree.*" *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001) (emphasis added).

■ "The purpose of Missouri's Merchandising Practices Act is 'to preserve fundamental honesty, fair play and right dealings in public transactions.'" *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 837[15] (Mo.App.2000) (quoting *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo.App.1973)). As stated above, the MMPA supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. *Clement*, 103 S.W.3d at 899. The statute and the regulation paint in broad strokes to prevent evasion thereof due to overly meticulous definitions. *Id.* at 900; *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo.App. 1988).

In May 2003, Defendant chose to unilaterally breach its contract with Plaintiff by refusing to honor the lifetime warranty. We believe this was an "unfair practice" within the meaning of the MMPA. To start with, this was not a "one-time" contract breach; it was the repudiation of a "lifetime" obligation. When Defendant chose, for the sake of money and its convenience, to break its promise to Plaintiff, it, in effect, chose to commit a breach each time a problem arises with the unit in the future. Considering the difficulties with the unit in the past, the future problems are a distinct possibility.

There is sufficient evidence here to support a finding that Defendant preyed on unsophisticated consumers, inducing them to buy its products on the promise that the units would work for a "lifetime" or the problem would be fixed. When this promise turns out to be untrue, who should bear the burden? Again, there is evidence from which the trial court could have found that Defendant, as a sophisticate in the ways of commerce, should have known it might not be around for Plaintiff's lifetime and should, therefore, be held responsible. Defendant could have easily provided a mechanism (such as an agreed one-time payment) for cancelling the warranties in the future due to unforeseen circumstances. That, however, was not done.

This state has a long held public policy that recognizes the right of persons or entities to freely contract; accordingly, courts enforce contracts that are lawful, even though they may be "bad deals" for a particular party. *Willman v. Beheler*, 499 S.W.2d 770, 777 (Mo.1973). Here, the trial court could have viewed Defendant's blatant and intentional refusal to honor its lifetime warranty as (a) violative of public policy, or (b) unethical conduct that caused substantial injury to a consumer. Accordingly, by definition (15 CSR 60–8.020), this was an "unfair practice" under section 407.020.1.

We are confirmed in this by looking at the Federal Trade Commission's ("FTC") interpretation of 15 U.S.C. § 45(a) (declaring "unfair or deceptive acts or practices" affecting commerce are unlawful).[8] For instance, in *Orkin Exterminating Company, Inc. v. FTC*, 849 F.2d 1354 (11th Cir. 1988), the FTC had ruled that Orkin's intentional, unilateral breach of lifetime guarantees constituted an unfair practice. In affirming the FTC, the 11th Circuit held that the "FTC's unfairness authority" can encompass breaches of contracts and that "something more" (such as bad faith or fraudulent behavior) need not be proven. *Id.* at 1363. In so holding, the court noted but refused to follow a line of cases cited by Orkin which hold that "simple" breaches of contract are not considered unfair practices unless accompanied by aggravating circumstances.[9] *Id.*

Here, the facts are similar. Both cases involve intentional, unilateral breaches of lifetime guarantees for financial motives. Both cases involve some conciliatory steps taken by the seller to lessen the effects of the breach. In both cases, harm was inflicted upon consumers. The only difference this court can see is that *Orkin* dealt with over 200,000 consumer contracts. This is not surprising as the federal law provides no mechanism for private enforcement. Although we need not do so, it is reasonable to infer that Defendant breached more warranties than the one involved here. This follows because Defendant's sole reason for breaching Plaintiff's contract was the fact that it was moving its business. Anyone in the Joplin area with a similar warranty likely received the same treatment. However, the fact that thousands of contracts were involved in *Orkin* is a distinction of no consequence. This is so because Missouri law provides a private cause of action for a private citizen. Thus, if reneging on a lifetime warranty is unfair (as we have held), under Missouri law it matters not that only one person was harmed.

Defendant's prior breach and continued breach of the lifetime warranty constitutes an unfair practice under the MMPA. We do not hold that every breach of contract constitutes an unfair practice under the MMPA; we simply conclude that Defendant's conduct here was sufficiently unfair

---

**8.** All states have enacted unfair and deceptive trade practices statutes (known as "Little FTC Acts") modeled, at least in part, on the federal law. *Bristol Technology, Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59, 91 (D.Conn.2000); *see also State ex rel. Nixon v. Telco Dir. Pub.*, 863 S.W.2d 596, 601–02 (Mo.banc 1993). The "unfair practices" definition promulgated by the attorney general in 15 CSR 60–8.020 closely resembles the early policy statement of the FTC as to its definition of unfairness. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, 92 S.Ct. 898, 905, 31 L.Ed.2d 170 (1972); *In the Matter of International Harvester Company*, 104 F.T.C. 949, 1984 WL 565290, 1984 FTC LEXIS 2, 245–250 (1984).

**9.** A good summation of this case law can be found in *Raad v. Wal–Mart Stores, Inc.*, 13 F.Supp.2d 1003 (Dist.Neb.1998). As noted by the *Orkin* court, however, these types of cases are "far from persuasive." *Orkin*, 849 F.2d at 1363 n. 9. For instance, the *Raad* court noted that, under North Carolina law, a mere breach of contract, even if intentional, was insufficient to constitute an unfair practice, but the failure to make any offer of concession for that breach was sufficient. *Raad*, 13 F.Supp.2d at 1017; *see Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 975 (4th Cir. 1997). Regardless, under similar types of reasoning, the present case would likely meet the definition of an unfair practice. In *Searles v. Fleetwood Homes*, 878 A.2d 509 (Me.2005), the court noted that "garden variety" breaches coupled with "a persistent refusal to take responsibility for repairs ... can support a finding of unfair or deceptive conduct." *Id.* at 520. Here, that coupling is present because Defendant refused to provide any coverage for the warranty after May 2003.

as to violate the MMPA.[10] Point denied.

### Point I: Res Judicata

▆▆▆ Defendant's first point urges reversal on the theory that Plaintiff's present suit was "barred by the doctrine of *res judicata* in that [Plaintiff] had already filed an action and obtained a judgment against [Defendant] arising out of the same breach of warranty asserted in this action." To assert res judicata as a defense, Defendant characterizes Plaintiff's earlier suit in small claims court as being the same "cause of action" that Plaintiff brought here. Apparently, Defendant has done so because res judicata is a doctrine that "bars relitigation of the same cause of action by the same parties or privities in a particular case if the two actions have [certain] common 'identities.'"[11] *State v. Polley*, 2 S.W.3d 887, 893[5] (Mo.App. 1999). The "identities" required for a res judicata defense are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *Id.*

Here, it is clear that "identities" (1), (3), and (4) exist; accordingly, Defendant's argument focuses on No. 2, identity of the cause of action. In that regard, Defendant says:

"A fair reading of the issues alleged in [P]laintiff's prior small claims petition and the instant petition and [Plaintiff's] amended petition shows that the actions are the same—they are based upon [Defendant's] refusal to honor the lifetime warranty. Both of [Plaintiff's] actions arise out of the same facts, and the issues in both cases are the same. After a trial on May 12, 2004, [Plaintiff] won a judgment against Defendant on his prior filed action ... awarding [Plaintiff] $1,047 [plus] costs. Plaintiff should not be allowed to have a second bite of the apple to recover the same damages or greater damages that [Plaintiff] has already been awarded in the prior action."

▆▆▆ The initial reason why Defendant's argument fails is the absence from the record of sufficient evidence to support Defendant's res judicata defense. "Res judicata is an affirmative defense that is not self-proving; evidence to support the defense must be adduced." *WEA Crestwood Plaza, L.L.C. v. Flamers Charburgers, Inc.*, 24 S.W.3d 1, 5[4] (Mo.App.2000).

What was Defendant required to prove to support its res judicata defense? In *Chesterfield Village*, 64 S.W.3d at 318[3], the Missouri Supreme Court explained:

"The Latin phrase '*res judicata*' means 'a thing adjudicated.' The com-

---

10. In so holding, we do not ignore Defendant's principal reliance on *Kiechle v. Drago*, 694 S.W.2d 292 (Mo.App.1985). That case is distinguishable on a number of grounds: (1) it did not involve the statutory language of "unfair practices" at issue here; (2) it did not involve a lifetime warranty; and (3) it merely held that allegations constituting a breach of contract were insufficient to support a finding of "false promise" or "deception" under the MMPA.

11. Defendant made no assertion in the trial court and makes no assertion to this court that Plaintiff's current suit was barred because it might have been raised in the previ-

ous action. *See Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318–19 (Mo.banc 2002). Even if this argument had been made, Plaintiff attempted to bring the MMPA violation into the first action, but was precluded from doing so by the trial court. In fact, at that time, Defendant characterized the MMPA claim as a "new cause of action." As such, Plaintiff exercised all reasonable diligence to bring the action forward. In this instance, the following is apropos: "Res judicata generally will not bar a claim which the claimant had no opportunity to bring in the prior proceeding." *Levine v. Hans*, 923 S.W.2d 357, 362 (Mo.App.1996).

mon-law doctrine of *res judicata* precludes relitigation of a claim formerly made.

"The key question is what is the 'thing'—the claim or cause of action—that has previously been litigated? A claim is '[t]he aggregate of operative facts giving rise to a right enforceable by a court.' The definition of a cause of action is nearly the same: 'a group of operative facts giving rise to one or more bases for suing.' Whether referring to the traditional phrase 'cause of action' or the modern terms 'claim' and 'claim for relief' ... the definition centers on 'facts' that form or could form the basis for previous adjudication."

This means Defendant had to show the trial court in the MMPA case what the operative "facts" were in the small claims suit. Defendant's only attempt in that regard was via its "motion to dismiss" filed in the MMPA case.[12] Specifically, Defendant attached to the motion two docket sheets from the prior case and Plaintiff's "small claims court petition." Defendant relies solely on the allegations of Plaintiff's petition to argue that "[b]oth of [Plaintiff's] actions arise out of the same facts, and the issues in both cases are the same."

▆▆▆ Such reliance, without more, is fatal to Defendant's res judicata argument. To start with, a transcript of the de novo trial of the small claims suit would have shown what "operative facts" led to the $1,047 judgment in that suit. However, neither the trial court nor this court had the benefit of that evidence (the de novo

transcript). Although pleadings present, define, and isolate the issues for trial, *Norman v. Wright*, 100 S.W.3d 783, 786[5] (Mo.banc 2003), appellate courts do not look to pleadings as evidence. *McDonald Revocable Trust*, 942 S.W.2d 926, 933[14] (Mo.App.1997).[13]

We recognize that Plaintiff's small claims petition could be read two ways, i.e., as seeking damages measured by the cost of replacing an evaporator coil or as seeking that *plus* damages for loss of warranty for all future problems. However, without a transcript, neither this court nor the trial court could know the evidentiary scope of the earlier trial.

▆▆▆ More than that, without a transcript of the de novo trial, neither this court nor the trial court could know whether the evidence at the de novo trial conformed to the small claims petition. Failure to timely object to evidence beyond the scope of the pleadings constitutes implied consent for a determination of the issues raised. *McCord v. Gates*, 159 S.W.3d 369, 375[12] (Mo.App.2004). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). Without a transcript, there is absolutely no way this court can determine if issues foreign to the small claims petition were tried; consequently, there is no way we can discern whether Defendant met his burden of proving his res judicata defense.[14]

---

**12.** The court's docket sheets reflect that it took the "motion to dism, etc., w/trial."

**13.** Exceptions to this do exist; for instance, *Ingalls v. Neufeld*, 487 S.W.2d 52 (Mo.App. 1972), states the rule that abandoned pleadings may be used as admissions against interest. *Id.* at 55[5]. Even for that purpose, however, such pleadings cannot be consid-

ered on appeal if they were not introduced into evidence. *Id.* at 55[6].

**14.** For instance, if Plaintiff introduced evidence of fraud at the trial de novo and Defendant failed to object, the judgment for $1,047 may have represented damages for separate harms not addressed in the present case.

A second fundamental reason exists why Defendant cannot prevail on this point. Defendant has failed to show what the small claims damage award ($1,047) represented. Defendant claims that Plaintiff's small claims petition only asked for damages flowing from the breach of the lifetime warranty generally, namely, the future damages for failing to guarantee the unit for life. However, giving the petition its broadest intendment, Plaintiff pled the following: (1) he asked for an evaporator coil to be replaced in September 2002; (2) Defendant failed to take any action; (3) in May 2003, the problem of freon leaking caused by the lack of a functioning evaporator coil was detectable; (4) Defendant failed to replace the coil or send him a new one; and (5) the damages were limited to the replacement coil.

Arguably, therefore, Plaintiff's small claims suit only sought damages for a breach of contract occurring in *September 2002*, i.e., not receiving the evaporator coil. Certainly, nothing about the small claims pleading compels a finding that Plaintiff used it to seek damages for unknown future contract breaches or for a total breach such as occurred in *May 2003* when Defendant told Plaintiff it "was not going to honor the warranty any more." It is clear, however, that Plaintiff, by his December 2004 suit, was seeking damages for loss of the lifetime warranty.

 There is no blanket prohibition about these two suits. "[D]istinct causes of action may arise from a single contract, transaction or occurrence." *Finley v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 593, 595 (Mo.App.1998). "[I]t is well-settled in Missouri that a party can bring successive claims on the same contract for damages that have not accrued as of the time of entry of judgment in the prior action." [15] *WEA Crestwood Plaza*, 24 S.W.3d at 9[23]. "An injured party may bring a succession of actions on breaches of a contract imposing a continuous duty which causes a steady accretion of damage." *Finley*, 958 S.W.2d at 595[6]. "Thus, while a contract is still in existence, each time the defendant fails to perform in accordance with its provisions is a separate violation of its terms and gives rise to a new cause of action." *Id.* at 595[7]. Without knowing how Plaintiff was compensated via the small claims court judgment, we cannot find that Defendant carried its burden of proving its res judicata defense nor can we find that Plaintiff was compensated twice for the same injury. For this additional reason, Defendant's point must be denied.

Defendant has failed to meet its burden to show the trial court erred when it denied Defendant's motion to dismiss on the grounds of res judicata. Defendant cannot overcome the presumption that the judgment is correct. Point denied.

### Point III: Statute of Limitations

Defendant's final point on appeal alleges the trial court erred when it failed to grant Defendant's motion to dismiss based on a statute of limitations argument. Defendant argues that the statute of limitations is either three years (§ 516.130) (action upon a statute for penalty or forfeiture) or five years (§ 516.120)(contracts and actions upon liability created by statute other than a penalty or forfeiture).

 We need not determine which statute of limitations applies because Defendant's argument is premised upon the

---

15. As noted previously, Defendant does not claim res judicata on the basis that the present suit could have been litigated in the previous action. *See* n. 11. As such, any argument of that nature has been waived. Moreover, Plaintiff may have not viewed the refusal and offer of money in May 2003 as a breach because Defendant had done so in the past, but continued to honor the warranty.

assertion that the harm was committed in May 1998, when the unit was sold. That premise is wrong. The harm here occurred in May 2003 when Defendant flatly refused to honor the lifetime warranty either then or in the future. *See* Point II. Upon that refusal and intent not to perform in the future, damage was sustained. Any applicable statute of limitations began to run from that point. *See* § 516.100; *Linn Reorganized School Dist. No. 2 of Osage County v. Butler Mfg. Co.,* 672 S.W.2d 340, 343 (Mo.banc 1984); *Verbrugge v. ABC Seamless Steel Siding, Inc.,* 157 S.W.3d 298, 302 (Mo.App.2005).

Plaintiff filed his suit in December 2004, i.e., one year and seven months later.

This court knows of no statute of limitations that would preclude Plaintiff's cause of action pursuant to the MMPA. Point denied.

The judgment of the trial court is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.