

# Missouri Court of Appeals
## Southern District
### Division Two

SANDY JACKSON,  )
)
    Plaintiff-Appellant,  )
)
v.  )    No. SD32526
)    Filed: 1-27-14
HAZELRIGG AUTOMOTIVE  )
SERVICE CENTER, INC.,  )
)
    Defendant-Respondent.  )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

### AFFIRMED

Plaintiff Sandy Jackson (Jackson) appeals from a judgment in her favor against Defendant Hazelrigg Automotive Service Center, Inc. (Hazelrigg) for breach of warranty. After finding that Hazelrigg had breached its warranty, the trial court awarded Jackson $1,892.58 in damages that she incurred within one year of the warranty. The court denied Jackson's request for damages occurring after the one-year warranty period, as well as punitive damages and attorney's fees that Jackson requested based on her allegation that Hazelrigg's conduct violated the Missouri Merchandising Practices Act

(MMPA).  *See* §§ 407.010-.307.[1]  The trial court concluded that there was no MMPA violation because Jackson failed to prove any deceptive act or unfair trade practice by Hazelrigg.

On appeal, Jackson presents three points for decision.  In her first two points, Jackson contends the trial court erred in finding that Hazelrigg did not violate the MMPA because:  (1) a "breach of warranty was as a matter of law and by definition an 'unfair practice' under the [MMPA]"; and (2) Hazelrigg violated the MMPA by an "omission of material fact" when Hazelrigg concealed from its written warranty that such warranty was only valid in its shop in Missouri.  In Jackson's third point, she contends the trial court's finding that Hazelrigg's "1 Full year, 12,000 mile warranty" meant that it "expired upon the sooner event of one year or 12,000 miles" was against the weight of the evidence.  Finding no merit in any of these contentions, we affirm.

## Standard of Review

As this was a court-tried case, our review is governed by Rule 84.13(d) and the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).  We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32; *Citibank (South Dakota), N.A. v. Mincks*, 135 S.W.3d 545, 548 (Mo. App. 2004).  "[A] trial court's judgment is presumed correct; an appellant bears the burden of proving his or her claims of error." *Reliable Roofing, LLC v. Jones*, 302 S.W.3d 232, 236 (Mo. App. 2009).  "With respect to issues of law, we independently evaluate the conclusions of law the trial court draws from its factual findings." *Christian*

---

[1]  All references to statutes are to RSMo (2000).  All references to rules are to Missouri Court Rules (2013).

2

*Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo. App. 2004). With respect to issues of fact, we review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Jackson v. Cannon*, 147 S.W.3d 168, 169 (Mo. App. 2004). "We defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part, or none of the testimony presented." *Christian Health Care*, 145 S.W.3d at 48. In addition, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Jackson*, 147 S.W.3d at 170. Our summary of the evidence, which is set forth below, has been prepared in accordance with these principles.

### Factual and Procedural Background

Jackson owned a 1978 Cadillac Coupe De Ville (the Cadillac). The vehicle was previously owned by Jackson's father, who knew David Hazelrigg (David), the president and owner of Hazelrigg.[2] In the past, Jackson's father and David were both service managers at different Chevrolet dealerships and were friends. David also was a technician and had been involved in auto mechanics since 1963. Hazelrigg had serviced the Cadillac over 60 times prior to September 2006, and neither Jackson nor her father ever experienced any problems with Hazelrigg's service.

In September 2006, Jackson brought the Cadillac to Hazelrigg to have the engine overhauled in preparation for a trip to Oregon. The Cadillac had been purchased new by Jackson's father. Jackson testified that, at the time of the overhaul, the Cadillac had approximately 118,000 miles on it. Hazelrigg did not replace the carburetor as part of the

---

[2] Because Hazelrigg is both a surname and name of the automotive service company, we use David's first name for purposes of clarity.

3

overhaul. Gary Edwards (Edwards), the auto technician at Hazelrigg who performed the engine overhaul, testified that the carburetor did not need to be replaced. Edwards had worked as an auto mechanic for over 27 years, performed at least 100 engine overhauls and was "very meticulous." After the overhaul, Edwards test-drove it around town and on the highway without any problems. David also personally test-drove the Cadillac around town and on the highway three to four times, and never observed any problems with the Cadillac's performance. The Cadillac was stored at Hazelrigg for over a month, during which time it was started twice a day, six days a week to move it in and out of the garage. No one ever experienced any problems with the car.

On December 29, 2006, Jackson picked up the Cadillac. She paid $4,013.42 for the overhaul. A "one Full year, 12,000 mile warranty" was handwritten on the invoice. Jackson drove the Cadillac around Springfield for approximately a week and did not experience any problems.

On January 2, 2007, Jackson left town in the Cadillac for Springfield, Oregon, which was 2,400 miles away. During the trip, she experienced three problems with the Cadillac: (1) poor gas mileage of six to seven miles per gallon; (2) a lifter noise; and (3) excessive oil consumption. Jackson reported some of these problems to David.

After Jackson arrived at her destination, she took the Cadillac to Sam's Auto Services (Sam's) for repairs. Ross Gibbs (Gibbs), a mechanic and manager of Sam's, believed the carburetor had been running too rich when it left Hazelrigg. In Gibbs' opinion, the carburetor should have been rebuilt or replaced in the engine overhaul by Hazelrigg. In April or May 2007, Gibbs rebuilt the carburetor, replaced the lifters and performed some other work unrelated to the overhaul by Hazelrigg. Gibbs talked to

4

David about the repairs over the phone. The invoice for repairs in May 2007 from Sam's totaled $1,899.65.

In August 2008, Gibbs performed a second overhaul of the Cadillac's engine that cost $3,110.38. The Cadillac had been driven a little over 6,000 miles since the first overhaul. In Gibbs' opinion, Hazelrigg's one-year warranty had expired by that date. Gibbs testified that the second overhaul was needed because a bent metering rod out of the jet of the carburetor allowed too much fuel in the engine, which led to "fuel washing" of the engine.[3] Jackson testified that the second overhaul at Sam's finally fixed the problems with the Cadillac, and it had run well ever since.

In March 2010, Jackson filed the underlying lawsuit against Hazelrigg for breach of warranty and violation of the MMPA. Jackson sought repayment for the Sam's repairs through August 2008, cost of extra fuel due to low gas mileage on the trip to Oregon, additional damages for loss of the vehicle's use, its diminution of value, punitive damages and attorney's fees. Findings of fact were also requested. A bench trial in the matter was held in August 2012. Those testifying on Jackson's behalf included Jackson; Donald Wischet (Wischet), a mechanic who had rebuilt 40-50 engines; and Gibbs, whose testimony was received via deposition. David and Edwards testified on Hazelrigg's behalf.

Of particular note is the testimony concerning the carburetor. Wischet agreed with Gibbs that the carburetor should have been rebuilt or replaced in the initial engine overhaul by Hazelrigg. In addition, Wischet and Edwards both testified that, when a metering rod is bent and out of the jet of the carburetor, the effects are "immediate" in the

---

[3] Gibbs explained that "fuel washing" occurs when too much fuel in the engine "contaminates the oil so it doesn't lubricate everything in the engine correctly."

5

form of smoke emissions, trouble starting the vehicle and trouble keeping it running. Similarly, if the Cadillac was consuming an excessive amount of oil, "there would be a smoke screen behind [the] car all the time."

David acknowledged that, during Jackson's trip to Oregon, she called him to report poor gas mileage and lifter noise, but she did not complain of excessive oil consumption. David asked Jackson if the Cadillac was emitting smoke, was hard to start or had trouble staying running. She told him, "No." David also testified that he talked with the mechanic at Sam's and asked if he would send replaced parts to David. According to David, it was customary to do so to determine whether the work was necessary and whether the part was defective, which would create the opportunity to return it for a refund. As of the time of trial, David had not received any parts. He admitted that he had done nothing to honor Hazelrigg's warranty on the Cadillac.

The trial court found first that, based upon the testimony of Wischet and Gibbs, Hazelrigg should have replaced the carburetor during the first engine overhaul of the Cadillac. The court then found that Hazelrigg's "written warranty for the work that it performed on [the] Cadillac expired upon the sooner event of one year or 12,000 miles" i.e., from December 2006 thru December 2007. The court specifically found that nothing was done to honor that warranty and that Hazelrigg had breached its warranty. Therefore, the court awarded $1,892.58 in damages representing "various charges from [Sam's] incurred in April, July, October and December, 2007[.]" The court concluded that these damages "were causally related to the warrantied services performed by [Hazelrigg] and therefore properly recoverable under [Jackson's] claim for breach of warranty." In determining the appropriate amount of damages, the court "considered the age of the vehicle and the delays and intervening time periods surrounding the work

6

performed by [Sam's]." The court did not award any damages that occurred after the warranty expired in December 2007.[4] The court denied Jackson's claims under the MMPA because Jackson "failed to show any deceptive act or unfair trade practice" by Hazelrigg. This appeal followed.[5] For ease of analysis, we will address Jackson's points in reverse order.

**Discussion and Decision**

*Point III*

In Jackson's third point, she contends the trial court's finding that Hazelrigg's written warranty for the work that it performed on the Cadillac expired upon the "sooner event of one year or 12,000 miles" is against the weight of the evidence. Based upon that contention, she argues that she should have been awarded additional damages relating to the second overhaul. We disagree.

Jackson's argument that the court's finding with respect to the warranty is "against the weight of the evidence" fails because it was not properly presented or

---

[4] Implicit in the court's findings is that problems that led to the second overhaul, namely the bent metering rod and excessive oil consumption, did not occur during Jackson's trip to Oregon, but months later after the warranty expired. Relevant to this implied finding, the court specifically found that: (1) if the metering rod had been bent and out of the jet when the Cadillac was at Hazelrigg, then the damage would have occurred before the Cadillac ever left Hazelrigg; (2) if the Cadillac had been consuming oil while Jackson was driving to Oregon in the amounts that she testified to during trial, then the Cadillac would have emitted profuse amounts of smoke; (3) neither Edwards, David nor any Hazelrigg employee reported any problems with the Cadillac before Jackson picked it up in December 2006; (4) Jackson did not experience any problems driving the Cadillac the week before she left for Oregon; (5) when asked by David whether the Cadillac was emitting smoke, hard to start or had trouble staying running during the trip, Jackson told him "No"; and (6) no one ever documented any evidence that the Cadillac was consuming an excessive amount of oil until March 2008, approximately 17 months after Hazelrigg performed the engine overhaul on the Cadillac.

[5] Hazelrigg's motion to dismiss this appeal for Rule 84.04 violations and an untimely notice of appeal was taken with the case and is denied.

adequately developed. Evidentiary "weight" refers to probative value, rather than the quantity or amount of evidence, and is determined by the ability to induce belief. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. 2010). An against-the-weight challenge presupposes the judgment's evidentiary support, but challenges that evidence's probative value to induce necessary belief, and involves four sequential steps. The appellant must:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id*. at 186-87.[6]

Here, Jackson completely failed to address the third step of the analysis, namely to identify the evidence in the record contrary to the belief of the challenged proposition, i.e., that the warranty extended to the "later" event of one year or 12,000 miles. *See id*. Indeed, there is absolutely no evidence that any of the experts or Jackson herself understood the warranty to extend beyond one year in this case. Jackson's own expert, Gibbs, testified that the warranty, beginning in December 2006, had expired by the time of the second overhaul in August 2008. In addition, Jackson acknowledged her own

---

[6]     These steps recognize that, while we must consider contrary evidence in this type of review, we still defer to the trial court's credibility decisions and will find a judgment to be against the weight of the evidence only when we firmly believe the judgment is wrong. *Houston*, 317 S.W.3d at 186.

understanding of the one-year expiration in this case by arguing that the engine damage "which led to the 2008 overhaul had actually already accrued in 2007 – it had just not been fixed yet."[7] Because Jackson failed to meet all the requirements of her against-the-weight challenge, Point III is denied.[8]

*Point II*

In Jackson's second point, she contends the trial court erred in failing to find Hazelrigg violated the MMPA by an "omission of a material fact" when Hazelrigg concealed from its written warranty that it was only valid in Hazelrigg's shop in Missouri. Jackson's point is based on testimony from Gibbs and David that, when they talked on the phone about the initial Sam's repairs, David told Gibbs that Hazelrigg's warranty was "here, not there."

---

[7] Further, contrary to Jackson's argument, the trial court did not find that the second overhaul was causally related to warranted work by Hazelrigg. In fact, the trial court found to the contrary: that problems with the bent metering rod and excessive oil consumption that led to the second overhaul did not occur during Jackson's trip to Oregon, but well over a year later. *See* n.4, *supra*.

[8] Jackson's third point raises two other claims of error, that the trial court misapplied the law in: (1) failing to find that the warranty language was "ambiguous," and because Hazelrigg drafted the warranty, the language must be construed in her favor; and (2) failing to award "diminution of value" as the "proper measure of damages for breach of warranty." We do not reach either claim for two reasons. First, challenging two or more different rulings in one point is multifarious, which preserves nothing for appellate review. ***Reliable Roofing, LLC v. Jones***, 302 S.W.3d 232, 235 (Mo. App. 2009); Rule 84.04(d)(1)(A). Second, our review of the record reveals that Jackson did not specify either argument at trial or in her motion for new trial. Jackson argued only generally at trial and in her new trial motion that the second overhaul was covered under the warranty because it was within 12,000 miles of the first overhaul and included "diminution of value of the vehicle" in her list of requested damages in her petition. Because the record does not establish that these issues were raised below, the issues have not been preserved for appellate review. ***Byrne v. Moore***, 332 S.W.3d 864, 867 (Mo. App. 2011). "We cannot convict the trial court of committing error with respect to an issue the court was not asked to decide." ***Id***.

As we understand Jackson's argument, the premise is that Hazelrigg denied coverage of its warranty because the warranty was limited only to repairs performed in its Missouri shop. Jackson then argues: (1) the "purported limitation" was a condition of the warranty; (2) Hazelrigg "concealed, suppressed or omitted" such condition from its written warranty; (3) such condition was a "material fact" of the warranty; (4) "concealment, suppression, or omission of any material fact" is a violation of the MMPA under § 407.020.1; and (5) the trial court therefore misapplied the law in failing to find Hazelrigg violated the MMPA.

We find no merit in this argument because it is based on a faulty premise. The trial court did not rely on or even mention that Hazelrigg denied coverage based on a "here, not there" limitation, nor did the court find this to be a condition of the warranty. To the contrary, the court held Hazelrigg liable for repairs that occurred at Sam's shop in Oregon during the warranty period through December 2007. Point II is therefore denied.

*Point I*

In Jackson's first point, she contends that the trial court erred in failing to find Hazelrigg committed an unfair practice under the MMPA because the court found that Hazelrigg breached its warranty and such breach "was *as a matter of law* and by definition an 'unfair practice'" under the MMPA. Before addressing the merits of this argument, an overview of the MMPA is helpful.

"The MMPA was enacted by the legislature to protect consumers." ***Chochorowski v. Home Depot U.S.A.***, 404 S.W.3d 220, 226 (Mo. banc 2013). The intent of § 407.020 was to "supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." ***State ex rel. Danforth v. Independence Dodge, Inc.***, 494 S.W.2d 362, 368

10

(Mo. App. 1973); *Chochorowski*, 404 S.W.3d at 226. The MMPA makes unlawful "[t]he act, use or employment ... of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise...." § 407.020.1. "Merchandise" is defined to include services. § 407.010(4).

In order to give broad scope to the statutory protection and prevent ease of evasion because of overly meticulous definitions, the MMPA does "not attempt to define deceptive practices or fraud, but merely declare unfair or deceptive practices unlawful ... *leaving it to the court in each particular instance to declare whether fair dealing has been violated.*" *Kiechle v. Drago*, 694 S.W.2d 292, 293-94 (Mo. App. 1985) (internal citation omitted; emphasis added). In addition, the MMPA also empowers the attorney general to promulgate rules necessary to administer and enforce it. § 407.145. In this case, Jackson relies on 15 CSR 60-8.070(1), which provides that "[i]t is an unfair practice for any person in connection with the sale of merchandise to unilaterally breach unambiguous provisions of consumer contracts." *Id*. (citing *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354 (11th Cir. 1988) (holding that exterminating company's unilateral breach of lifetime guarantee for termite control was an unfair practice)).

Jackson specifically argues that Hazelrigg's breach of warranty was "*per se*" an "unfair practice" under the MMPA as defined under 15 CSR 60-8.070. Jackson relies on *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228 (Mo. App. 2006), in which this Court held that breach of a lifetime warranty of an air conditioning unit constitutes an unfair practice under the MMPA. Relying on *Orkin*, *supra*, this Court explained:

> Here, the facts are similar. Both cases involve intentional, unilateral breaches of lifetime guarantees for financial motives. Both cases involve

11

some conciliatory steps taken by the seller to lessen the effects of the breach. In both cases, harm was inflicted upon consumers. ... Defendant's prior breach and continued breach of the lifetime warranty constitutes an unfair practice under the MMPA. We do not hold that every breach of contract constitutes an unfair practice under the MMPA; we simply conclude that Defendant's conduct here was sufficiently unfair as to violate the MMPA.

*Schuchmann*, 199 S.W.3d at 234-35. Jackson argues that like the breach of a lifetime warranty in *Schuchmann* and *Orkin*, Hazelrigg's breach of its one-year warranty is, "as a matter of law," an unfair practice.

We disagree with Jackson's argument because whether a practice is unfair or deceptive is a question of fact left up to the trial court to decide. *See Kiechle*, 694 S.W.2d at 293 ("leaving it to the court in each particular instance to declare whether fair dealing has been violated"). *Kiechle*, for example, similarly involved a plaintiff car owner suing a defendant repair shop owner for, *inter alia*, breach of contract and violation of the MMPA, for fraud in particular. After evidence was presented, the trial court dismissed the count alleging violation of the MMPA. The western district of this Court affirmed, explaining:

> In this case, there was no evidence that [defendant] made any false promise or practiced any deception with respect to his ability to restore plaintiff's vehicle. Indeed, the evidence shows that he undertook to repair it, although the work was slowly done. There was no evidence of a course of conduct on [defendant's] part that would amount to fraud or deception. ... *All the evidence here shows is a breach of contract by [defendant] to complete the repair and restoration of the car according to plaintiff's direction ....*"

*Id*. at 294 (emphasis added).

Like *Keichle*, we similarly find the evidence in this case shows only a breach of contract by Hazelrigg to complete the repairs as directed. *See id*. Although *Keichle* involved fraud and not an unfair practice under the MMPA, what constitutes an unfair practice was still a fact question for the trial court to decide. *Id*. at 293. Therefore,

12

contrary to Jackson's argument, Hazelrigg's breach of its one-year warranty is not, as a matter of law, an unfair practice. *See also* **Schuchmann**, 199 S.W.3d at 235 n.10 (distinguishing **Kiechle** on the ground, *inter alia*, that **Kiechle** did not involve a lifetime warranty).[9] Point I is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

---

[9] Jackson further argues that while Hazelrigg did not breach a lifetime warranty, its breach was nevertheless particularly "egregious" because Hazelrigg repaired the Cadillac knowing of its Oregon destination and the denied coverage of the warranty based on its assertion that the warranty was "here, not there." As established in Point II, however, the trial court did not rely on the "here, not there" limitation at all in deciding this case.