**LANE HOUSE CONSTRUCTION, INC., Respondent,**

v.

**Steve TRIPLETT, Appellant.**

No. ED 105312

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: November 21, 2017

ATTORNEYS FOR APPELLANT: James M. Belz, 112 S. Hanley Road, Suite 200, St. Louis, MO 63105.

ATTORNEYS FOR RESPONDENT: William F. Whealen, Jr., 11970 Borman Drive, Suite 250, St. Louis, MO 63146.

ROBERT G. DOWD, JR., Presiding Judge

Steve Tripl–ett ("Appellant") appeals from the judgment based upon a directed verdict in favor of Lane House Construction, Inc. ("Respondent") on his claim under the Missouri Merchandising Practices Act ("MMPA"), which was filed as a counterclaim against Respondent. We reverse and remand for a new trial on Appellant's counterclaim.

The claims in this case pertain to a second-story addition Respondent was hired to construct on Appellant's home. Respondent sued Appellant for breach of contract, claiming that Appellant still owed $9,500 under the contract plus interest and attorney fees for the project. Appellant filed a counterclaim under the MMPA,[1] claiming that Respondent's work was done poorly and slowly and was never materially completed. Appellant claimed that Respondent strayed from architectural plans in significant and material ways. Among other allegations, Appellant alleged certain defects with respect to the installation of the stairs and a roof that leaked significantly causing water damage as well as issues with siding and holes in various places in the home. Appellant asserted that Respondent "used deception, fraud, false pretense, misrepresentation, unfair practices and/or concealment" in connection with the sale or advertisement of the second-story addition. Appellant alleged that as a result of Respondent's conduct, Appellant was induced to enter into and continue making payments under the agreement into which the parties had entered and to allow Respondent to make "unsatisfactory and untimely real estate improvements." In addition to actual damages, Appellant sought punitive damages.

The case was tried before a jury. At the close of the evidence, the trial court granted Respondent's motion for directed verdict on Appellant's MMPA claim. Thereafter, the jury found for Appellant on Respondent's breach of contract claim. This appeal of the trial court's directed verdict on Appellant's MMPA claim follows.

Appellant claims the trial court erred (1) in refusing to allow Appellant's pleadings to conform to the evidence because said conformity is automatic under Missouri law, (2) in entering a directed verdict on Appellant's MMPA because, in viewing all the evidence and permissible inferences favorable to Appellant, he proved all the necessary elements of his claim and (3) in rejecting Appellant's claim for punitive damages because Appellant presented substantial evidence that Respondent's conduct was outrageous because of evil motive or reckless indifference to the rights of others. Regardless of whether Appellant should have been allowed to amend his pleadings to conform to the evidence, we find the evidence adduced at trial sufficient to withstand directed verdict. Accordingly, we need not address Appellant's first point on appeal and turn to Appellant's second point.

"In reviewing a directed verdict in favor of a defendant, the appellate court views the evidence and permissible inferences most favorably to the plaintiff, disregards contrary evidence and inferences, and determines whether plaintiff made a submissible case." *Morehouse v. Behlmann Pontiac-GMC Truck Service, Inc.,* 31 S.W.3d 55, 57 (Mo. App. E.D. 2000). In analyzing whether the plaintiff made a submissible case, we must determine "whether the plaintiff introduced substantial evidence at trial that tends to prove the essential facts for his or her recovery." *Intertel, Inc. v. Sedgwick Claims Management Services, Inc.,* 204 S.W.3d 183, 199 (Mo. App. E.D. 2006). "Directing a verdict is a drastic remedy." *Morehouse,* 31 S.W.3d at 57. "A presumption is made in favor of reversing the trial court's grant of a directed verdict unless the facts and any inferences from those facts are so strongly against the plaintiff as to leave no room for

1. Appellant also filed counterclaims for breach of contract and abuse of process but dismissed them prior to trial.

reasonable minds to differ as to the result." *Intertel, Inc.*, 204 S.W.3d at 199

■ "The purpose of [the MMPA] is to preserve fundamental honesty, fair play and right dealings in public transactions." *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. S.D. 2006) (internal quotation marks omitted). It supplements common law fraud, "eliminating the need to prove an intent to defraud or reliance." *Id.* "It is the defendant's conduct, not his intent, which determines whether a violation has occurred." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016). "The statute and the regulation paint in broad strokes to prevent evasion thereof due to overly meticulous definitions." *Schuchmann*, 199 S.W.3d at 233.

In order to prevail on his MMPA claim, Appellant must prove he has: (1) purchased merchandise; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under Section 407.020. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 20007); Section 408.025.1. Unlawful conduct under Section 407.020 includes:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose . . . in or from the state of Missouri.

Section 407.020.1 further provides that "[a]ny act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation."

"[T]he literal words" of the MMPA have been described as "cover[ing] *every practice imaginable and every unfairness to whatever degree.*" *Schuchmann, Inc.*, 199 S.W.3d at 233 (emphasis in the original) (citing *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001)). Our courts have also held that the plain and ordinary meaning of the words themselves in Section 407.020.1 are "unrestricted, all-encompassing and exceedingly broad." *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191 (Mo. App. W.D. 2013) (citing *Ports Petroleum Co., Inc.*, 37 S.W.3d at 240). Accordingly, we are faced with a presumption in favor of reversing the trial court's drastic remedy of granting Respondent's motion for directed verdict on alleged violations of a statute whose language is "unrestricted, all-encompassing and exceedingly broad" and requires a showing of neither intent nor reliance.

■ Here, we must consider whether, when viewing the evidence and permissible inferences most favorably to Appellant and disregarding contrary evidence and inferences, Appellant presented substantial evidence that Respondent used or employed "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact" in connection with the sale of the second-floor addition that Respondent was to complete. Section 407.020.1. We find that he has.

In addition to also testifying to all the specific issues with Respondent's work, Appellant testified to various alleged misrepresentations by Respondent. One claimed misrepresentation by Respondent was contained in a pamphlet Appellant received from Respondent's representative, whom he met at a trade show, which indicated that Respondent had become one of the fastest growing residential remodeling

companies in the area "due to high quality material, skilled craftsmen, competitive pricing, and one of the strongest warranties in history, in the industry." The pamphlet also indicated that Respondent's employees were "certified, trained, and experienced to ensure quality." Appellant claims this was a misrepresentation because Respondent only had three employees, the owner and two clerical employees. Appellant testified that if he had known that Respondent only had three employees, the owner and two clerical employees, at the time he entered the contract with Respondent, he would not have done business with Respondent. Similarly, had he known that Respondent did not have any certified, trained or experienced employees who actually worked for Respondent, other than the owner, he would not have done business with Respondent. Appellant further claims that he was deceived regarding the involvement of Respondent's representative, whom Appellant met at this trade show. Appellant testified that this representative indicated that he would be the one to do the second-story addition, but he was not involved in the project in any way.

Appellant testified that Respondent told him that Respondent had done second-floor additions before and that Respondent's "website says they do second floor additions,"[2] but the testimony at trial was that Respondent had never done another second-floor addition and that the subcon-

tractor in charge of the project had only completed one other second-story addition, and it was not through his work with Respondent. Appellant testified that if he had known that Respondent had never before completed a second-story addition, he would not have done business with Respondent. Appellant also testified that had he known that the subcontractor who was acting as the contractor for the project had only been involved in one other second-floor addition and that he was the only person associated with Respondent who had ever been involved in one and he was not involved in the project while working for Respondent, Appellant would never have done business with Respondent. Appellant testified he went into the project thinking that Respondent was very experienced in doing second-floor additions and that when he presented the plans he had drawn up to Respondent's representative, the representative expressed no reservations about doing the work. Appellant testified that he did not perform any additional investigation because he trusted what he saw in the literature and what he heard from Respondent's representative.

Appellant also claims that Respondent deceived him into making a $15,000 payment before it was due and the project was complete by claiming the money was needed to pay subcontractors. At the time the Respondent made the request, Appellant had paid Respondent according to the parties' payment plan, and no money was due.

**2.** Other evidence in the case indicated that the website actually contained the following language:

> You need a larger home yet you don't want to move house [sic], expanding your property with a room addition is often a great way to address your floor space situation. The options available to you will, of course, depend on your property and budget, and room additions may come in the form of an additional floor, a garage, a sunroom, or any other kind of extension to your house.

While Respondent would argue this was not a representation that Respondent was, in fact, experienced in completing second-story additions, there could be some question whether, given the facts of this case, this was deceptive or misleading so as to constitute unlawful conduct under the MMPA. As indicated below, these are questions of fact, and in this jury tried-case, those facts are for the jury to decide. As such, they do not defeat submissibility for purposes of directed verdict.

Appellant testified that he agreed to pay the additional amount ahead of schedule because he wanted the project completed and Respondent had represented that it needed the money to pay subcontractors to continue to work on the project. Appellant testified that had he known that, at the point the request was made, he had actually paid Respondent $6,000 more than Respondent had paid for all subcontractors and materials throughout the entire project, he would not have paid Respondent the $15,000, which was not owed until the work was complete.[3]

A reasonable consumer's understanding of whether Respondent's practices were unfair or deceptive are questions of fact. *See Murphy*, 503 S.W.3d at 312 (noting a reasonable consumer's understanding of whether a practice is unfair or deceptive is a question of fact); *Jackson v. Hazelrigg Automotive Service Center, Inc.*, 417 S.W.3d 886 (Mo. App. S.D. 2014) ("[W]hether a practice is unfair or deceptive is a question of fact left up to the trial court to decide."). We find the above evidence along with its permissible inferences creates a question of fact for the jury whether Respondent's alleged conduct involved "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact" under Section 407.020.1. We find that reasonable minds could find some basis for concluding that Respondent's conduct was unlawful under the MMPA,[4] and therefore, directed verdict was improper.

Our decision here is not meant to suggest that every breach of contract or any deviation from any representation by a contractor is actionable under the MMPA. Given the "unrestricted, all-encompassing and exceedingly broad" language of the MMPA and our presumption in favor of reversing the grant of a directed verdict, we find sufficient evidence from which a reasonable juror could infer deception under the facts of this case. As such, we leave it for the jury to decide whether Respondent's alleged conduct here was deceptive or unfair.

Point II is granted.

As for Point III, because we are reversing and remanding the case for proceedings consistent with this Opinion, it is premature for this Court to make any ruling on Appellant's claim for punitive damages. Point III is denied.

---

3. We note that our record is unclear as to the evidence admitted to establish that Appellant paid Respondent more than Respondent had paid for all subcontractors and materials throughout the entire project. Even if there is a question as to what evidence was admitted on this particular claim, we find sufficient evidence in the record as a whole for Appellant's MMPA claim to survive directed verdict.

4. Respondent argues that because Respondent improved the value of Appellant's home by completing the work that it did, Appellant suffered no ascertainable loss. However, we must view the evidence and permissible inferences in the light most favorable to Appellant, and Appellant's expert estimated it would take $17,936 to make the outstanding repairs. Appellant testified that he is seeking $9,896 in actual damages, which is $17,936 less the amount Appellant would owe Respondent if the job were complete.

Respondent also claims Appellant suffered no ascertainable loss because, although Appellant contracted with Respondent for the second-story addition to his home, Appellant's counsel stipulated that all payments to Respondent came from the company Appellant owns and not from Appellant himself. This issue is not properly before this Court because the trial court denied Respondent's attempts to put on evidence in this regard and ultimately ruled in Respondent's favor by granting its motion for directed verdict. Because we now reverse and remand, Respondent can once again pursue this claim before the trial court should it so choose.

Judgment is reversed, and the matter is remanded to the trial court for a new trial on Appellant's counterclaim.

Sherri B. Sullivan, J. and Kurt S. Odenwald, J., concur.